Hubert Ray PORTER, Jr., Appellant,

v.

The STATE of Texas, Appellee.

Nos. 14–01–00177–CR to
14–01–00179–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Sept. 5, 2002.

Matt Hennessy, Houston, for appellants.

Donald W. Rogers, Houston, for state.

Panel consists of Justices YATES, EDELMAN, and WITTIG.*

## OPINION ON MOTION FOR REHEARING

RICHARD H. EDELMAN, Justice.

Appellant's motion for rehearing is overruled, the opinion issued in this case on May 23, 2002, is withdrawn, and the following opinion is issued in its place.

Hubert Ray Porter, Jr. appeals three theft convictions on the ground that the trial court erred in denying his motion to suppress in each case because the affidavit supporting the search warrant used to collect the challenged evidence contained information that was illegally obtained, but omitted information that would have made that illegality evident. We affirm in part and dismiss in part.

### Background

In 1999, appellant pleaded guilty to two state jail felony thefts, in cause numbers 805407 (14–01–00178–CR) and 807627 (14–01–00177–CR) (the "original offenses"). The trial court accepted the pleas and placed him on deferred adjudication community supervision for four years. Appellant did not appeal those judgments.[1]

---

* Senior Justice Don Wittig sitting by assignment.

1. A defendant placed on deferred adjudication community supervision may raise issues relating to the original plea proceeding only in appeals taken when deferred adjudication community supervision is first imposed.

In 2000, while still on community supervision for the original offenses, appellant was charged with a state jail felony theft of lawn equipment (the "subsequent offense") in cause number 854498 (14–01–00179–CR). The State filed a motion to adjudicate guilt on the original offenses based on appellant's violations of the community supervision conditions by: (a) committing the subsequent offense plus misdemeanor offenses of marijuana possession and tire theft; and (b) failing to notify his community supervision officer of changes in his employment and residence addresses.

Appellant filed an identical motion to suppress (the "motion to suppress") in the original offenses and subsequent offense. In a single proceeding, all three motions were heard together, each was denied, the trial court heard evidence on adjudication of guilt in the original offenses and guilt of the subsequent offense, and it convicted appellant of all three. For each of the three offenses, the trial court sentenced him to two years confinement with all three sentences to run concurrently.

On appeal, appellant's three points of error challenge the denial of his motion to suppress because the affidavit (the "affidavit") given in support of the search warrant pertaining to the subsequent offense contained information that was illegally obtained and omitted information which would have made the illegality evident. Appellant contends that if the motion to suppress had been granted, there would have been no evidence of the subsequent offense or the other offenses alleged in the motions to adjudicate guilt and thus no adjudication of guilt of the original of-

fenses or conviction of the subsequent offense.

## Jurisdiction

■■■ No appeal may be taken from a determination by a trial court of whether to proceed with an adjudication of guilt on the original charge due to a violation of a condition of community supervision. TEX. CODE CRIM. PROC. ANN. art. 42.12 § 5(b) (Vernon Supp.2002). Thus, a defendant on deferred adjudication who is adjudicated guilty of the original charge may not raise on appeal contentions of error in the adjudication of guilt process. *Connolly v. State*, 983 S.W.2d 738, 741 (Tex.Crim.App. 1999). This includes assertions that evidence used at the adjudication hearing was illegally obtained. *See Holder v. State*, 618 S.W.2d 80, 81 (Tex.Crim.App. [Panel Op.] 1981).

In this case, because appellant may not appeal the trial court's adjudication of guilt on the original offenses, we may not address appellant's first and second points of error, challenging the denial of the motion to suppress in those cases. Accordingly, those points of error, and the appeals of those convictions, are dismissed.[2] We thus turn to appellant's third point of error, challenging the denial as to the subsequent offense.

## Validity of Affidavit

### Standard of Review

In a motion to suppress hearing, the trial court is the sole trier of fact and may choose to believe or disbelieve any or all of a witness's testimony, even if it is uncontroverted. *State v. Ross*, 32 S.W.3d 853,

*Manuel v. State*, 994 S.W.2d 658, 661–62 (Tex.Crim.App.1999).

2. *See Reagan v. State*, 832 S.W.2d 125, 127 (Tex.App.-Houston [1st Dist.] 1992, no pet.); *Wienbrink v. State*, 825 S.W.2d 259, 260 (Tex.

App.-Houston [1st Dist.] 1992, no pet.). The State's motions to dismiss the appeals in cause numbers 14–01–00177–CR and 14–01–00178–CR are thus granted.

855 (Tex.Crim.App.2000). Accordingly, in reviewing a ruling on a search or seizure issue, we give almost total deference to a trial court's determinations that turn on an evaluation of credibility and demeanor and review *de novo* application of law to fact questions that do not turn on an evaluation of credibility and demeanor. *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex.Crim. App.2002). In so doing, we examine the evidence in the light most favorable to the trial court's ruling, and, where findings of fact have not been filed, we assume the court made implicit findings of fact that support its ruling to the extent the record supports them. *Roquemore v. State*, 60 S.W.3d 862, 866 (Tex.Crim.App.2001).

### Entry onto Property

■ Appellant first challenges the validity of the affidavit on the ground that information reflected in it and necessary to establish probable cause was illegally obtained by officers' entry onto appellant's property (the "property") through a closed gate in the fence surrounding it. Appellant claims that this entry was illegal because it was made without a warrant, consent, or exigency, and, even if pursuant to a warrant, in violation of article 15.25 of the Texas Code of Criminal Procedure.[3]

■ Absent express orders from a person in possession of property not to trespass, a police officer is not prevented from approaching the front door of a residence. *See Cornealius v. State*, 900 S.W.2d 731 (Tex.Crim.App.1995). In this case, appellant cites no evidence of a sign prohibiting entry onto the property or that the gate was locked, but only that it was a motorized gate, operated by remote control, which the officers instead pushed open.

At least one Texas court has held that unlatching an ordinary latch on a closed, but unlocked, gate to approach the front door of a house is not an illegal entry by police. *See Nored v. State*, 875 S.W.2d 392, 396–97 (Tex.App.-Dallas 1994, pet. ref'd). In terms of the degree to which it signifies an intent to exclude the public, a remote control gate is somewhere between a locked gate or sign prohibiting entry and a gate closed with an ordinary latch, and is thus somewhat ambiguous. Although a remote control mechanism on a gate can support an inference that it is intended to prevent the gate from being opened otherwise and to thereby exclude the public, it can also reasonably support an inference that it is merely intended to hold the gate shut, like an ordinary gate latch, while also allowing it to be opened by remote control when convenient. Based on the latter inference, it would not have been an abuse of discretion for the trial court to conclude that the officers pushing the gate open to approach the front door was not an illegal entry.

In addition, the conditions of appellant's deferred adjudication community supervision (the "conditions") ordered, among oth-

---

**3.** *See* Tex.Code Crim. Proc. Ann. art. 15.25 (Vernon 1997) (in a felony case, an officer may break down the door of any house for the purpose of making an arrest, if he be refused admittance after giving notice of his authority and purpose). Although acknowledging that a violation of article 15.25 does not render a resulting arrest invalid, appellant contends, by analogy to the curtilage concept under Fourth Amendment law, that entry through the front gate of a yard should be analyzed as if it were through the front door of a home, such that an entry through a gate without notice causes officers to be on the premises illegally. Appellant cites no authority extending article 15.25 to the gate of a yard (as contrasted from the door of a house), and the Court of Criminal Appeals has overruled a challenge to the admissibility of evidence based on a violation of article 15.25. *See Jones v. State*, 568 S.W.2d 847, 857–58 (Tex. Crim.App.1978). Therefore, we overrule the portion of appellant's challenge based on article 15.25.

er things, that he permit his community supervision officer to visit him at his home,[4] and that he must notify the Harris County Community Supervision and Corrections Department of any change of residence within 48 hours of the change. Appellant does not challenge the validity of these conditions.

■ The condition that appellant permit a community supervision officer to visit him at his home logically necessitated that such an officer have access to reach the front door of appellant's home (or another location from which he could give notice of his intent to have a visit). In this case, there was evidence that appellant had changed his residence to the property without notifying the department and that the officers who entered the property included probation officers who were making a home visit to determine whether appellant was residing there. Under these circumstances, we believe that pushing the gate open to approach the front door was reasonably within the scope of what the conditions allowed the officers to do.[5] Therefore, we overrule appellant's contention that the officers' entry through the closed gate was unlawful.

*Dog Sniff*

■ Appellant next contends that the dog sniff outside his front door, which alerted the officers to the presence of a controlled substance inside his house, was itself an illegal search. For Fourth Amendment purposes, a "search" does not occur, even when the explicitly protected area of a house is concerned, unless a reasonable expectation of privacy exists in the object of the challenged search. *Kyllo v. United States*, 533 U.S. 27, 121 S.Ct. 2038, 2042–43, 150 L.Ed.2d 94 (2001).[6] An individual has no reasonable expectation of privacy in possessing illegal drugs. *See United States v. Jacobsen*, 466 U.S. 109, 123, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984). Therefore, a government investigative technique, such as a dog sniff or chemical test, that discloses only the presence or absence of narcotics, and does not expose noncontraband items, activity, or information that would otherwise remain hidden from public view, does not intrude on a legitimate expectation of privacy and is thus not a "search" for Fourth Amendment purposes. *See City of Indianapolis v. Edmond*, 531 U.S. 32, 121 S.Ct. 447, 453, 148 L.Ed.2d 333 (2000); *Jacobsen*, 466 U.S. at 122–24, 104 S.Ct. 1652; *United*

4. *See* Tex.Code Crim. Proc. Ann. art. 42.12, § 11(a)(5) (Vernon Supp.2002) (including this as a permissible condition of community supervision).

5. This is not to suggest that the conditions authorized officers to use any means necessary to gain access to appellant's front door, but only that pushing the gate open was within the scope of what we believe the conditions reasonably did allow. It is well recognized that the State's need to supervise parolees and probationers allows their liberty and privacy to be impinged more than those of the public at large. *See, e.g., Griffin v. Wisconsin*, 483 U.S. 868, 874–75, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987). Although it is arguable that a similar rationale applies to defendants on deferred adjudication community supervi-

sion, that issue need not be addressed in this case because we conclude that the officers' actions were permitted by the conditions, the validity of which has not been challenged.

6. In this context, we understand the term, "object of the search," to include not only the items searched for but also the areas or aspects of a location that are searched. Therefore, the referenced portion of *Kyllo* does not mean that the presence of illegal items in a home lessens the expectation of privacy there so as to allow it to be searched without a warrant, but only that an investigative method that can only detect the existence of illegal items in a home, and does not intrude on any other areas or aspects of it, is not a search for Fourth Amendment purposes.

*States v. Place*, 462 U.S. 696, 706–07, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983).[7] Because the dog sniff in this case was such an investigative method, it was not a search and thus not an illegal one.

Finally, appellant contends that the search was invalidated by the omission from the affidavit of facts showing that the officers illegally obtained the information reflected in the affidavit. However, because appellant has not demonstrated that any of the information in the affidavit was illegally obtained, we have no basis to conclude that the affidavit and warrant were invalid for either including the information obtained or for excluding information showing how it was obtained. Accordingly, appellant's third point of error is overruled, and the judgment of the trial court is affirmed as to cause number 14–01–00179–CR. As noted above, the appeals in cause numbers 14–01–00177–CR and 14–01–00178–CR are dismissed.

Senior Justice DON WITTIG concurs in result only.

---

**7.** *See also United States v. Tarazon–Silva*, 960 F.Supp. 1152, 1162–63 (W.D.Tex.1997) (holding that dog sniff of dryer vent of house was not a search), *aff'd*, 166 F.3d 341 (5th Cir. 1998); *People v. Dunn*, 77 N.Y.2d 19, 563 N.Y.S.2d 388, 564 N.E.2d 1054, 1056–57 (1990) (holding that canine sniff outside an apartment was not a search), *cert. denied*, 501 U.S. 1219, 111 S.Ct. 2830, 115 L.Ed.2d 1000 (1991). *But see United States v. Thomas*, 757 F.2d 1359, 1366–67 (2d Cir.1985) (holding that dog sniff at door of apartment constituted search), *cert. denied*, 474 U.S. 819, 106 S.Ct. 66, 88 L.Ed.2d 54 (1985), *and cert. denied*, 479 U.S. 818, 107 S.Ct. 78, 93 L.Ed.2d 34 (1986); *State v. Ortiz*, 257 Neb. 784, 600 N.W.2d 805, 819–20 (1999) (holding that dog sniff in hallway outside apartment was a search). A dog sniff is also not a search for purposes of Article I, Section 9 of the Texas Constitution. *Josey v. State*, 981 S.W.2d 831, 845 (Tex.App.-Houston [14th Dist.] 1998, pet. ref'd). By contrast, the use of a thermal imaging device to record the heat being emitted from within a home is a "search" because it can reveal information about legal activity inside the home as to which individuals have a legitimate expectation of privacy. *See Kyllo*, 121 S.Ct. at 2043–46.